IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATHAN LATTING,<br><br>   Plaintiff,<br><br>v.<br><br>AARON TAYLOR,<br> WARDEN OF DORCHESTER COUNTY<br>  DETENTION CENTER,<br>MAJOR ROBINSON,<br><br>   Defendants. | Civil Action No.: BAH-23-2523 |

**MEMORANDUM OPINION**

In response to the above-entitled civil rights complaint, Defendants filed a motion to dismiss or, in the alternative, for summary judgment. *See* ECF 13. Plaintiff Nathan Latting, who is currently incarcerated at Eastern Correctional Institution in Westover, Maryland, opposes the motion. ECF 15. Defendants filed a reply addressing Latting's assertion that the incident in question was recorded on video surveillance. ECF 17. No hearing is necessary to resolve the matters pending. *See* L. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion, construed as one seeking summary judgment, shall be granted.

**I.     BACKGROUND**

At the time of the incident giving rise to this lawsuit, Latting was confined to the Dorchester County Detention Center ("DCDC"). On the date of the incident, January 12, 2023, Latting had not yet entered a guilty plea to the pending criminal charges against him. *See State v. Latting*, Crim. Case No. C-09-CR-23-000051 (Dorchester Cnty. Cir. Ct.), available at https://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis. Latting pleaded guilty

on May 26, 2023. *Id.* Thus, his claims will be analyzed under the standard applicable to pre-trial detainees. *See Simmons v. Whitaker*, 106 F.4th 379, 388 (4th Cir. 2024).

Latting claims that on January 12, 2023, Officer Taylor was attempting to "unlawfully assault another inmate (Tarish Thompson)" when Taylor "blindsided [Latting] from behind[,] forcing [Latting] out of the way with the whole mass of [Taylor's] body." ECF 6 (amended complaint), at 4. Latting states that "Taylor is more than 250 lbs in weight," and that the incident caused "injury and excruciating pain in his foot." *Id.* Latting alleges that the incident "required" him to be "attended by prison health services" on the date of the incident. *Id.* Latting further details that the incident caused an injury "to one of [his] legs" and "also aggravated [his] neuropathy." *Id.* at 5.

Defendants provide records reflecting that Latting was seen by healthcare providers just a few days before the incident complaining of "pain and swelling" in his right foot. ECF 13-3, at 3 (reflecting January 8, 2023 visit to healthcare provider). Defendants' records also document Latting's January 12, 2023 health care. *Id.* at 3. Registered Nurse Crystal Larrimore documented that Latting had reported that an officer "ran into [him] in the hallway." *Id.* Latting allegedly stated that he "did not fall to the floor," but "extended [his] right arm to catch [him]self." *Id.* Larrimore did not observe any redness, bruising, or markings in the area where Latting complained of pain and noted that Latting's range of motion ("ROM") was good. *Id.* Larrimore reports that Latting remarked during the examination, "I should have said he hit my foot too, and got that."[1] *Id.* Later that same day, records reflect that Latting "requested to have the nurse come look at his

---

[1] Defendants attach an "Incident Report" drafted by a corrections officer who escorted Plaintiff to receive medical care following the January 12, 2023 incident. ECF 13-4, at 1. That report sheds more light on Plaintiff's alleged statement to the nurse by recounting that Plaintiff remarked, "I should of [sic] said he hit my foot, too, and fell to the floor and sued this bitch." *Id.* Plaintiff's filings do not refute this summary of Plaintiff's statement to the nurse.

2

foot." *Id.* Latting allegedly complained that the incident with Taylor had "made his foot pain worse." *Id.* Latting also said he "needed to see . . . a real foot doctor and go to the hospital." *Id.* Although swelling was observed in Latting's foot," the nurse who saw Latting described it as "normal." *Id.* Further, Latting's gait was described as "steady," and Latting had "positive ROM." *Id.* Latting was "moved to medical for ice elevation and monitoring." *Id.* Latting complained of soreness at another visit with Nurse Larrimore on January 13, 2023. *Id.* at 2. He also made a comment to Larrimore "regarding just falling on the floor during [his] assessment" the day before. *Id.* Again, "no markings or bruising" were noted and Latting allegedly said that "ice was helpful" in controlling his pain. *Id.*

In Latting's view, Taylor's assault amounted to an unconstitutional use of force. ECF 6, at 4. Latting adds that Taylor is known to be a "loose cannon" with multiple complaints filed regarding Taylor's inability to "control his rage." *Id*. at 5. Latting believes that both the Warden of DCDC and Major Robinson, who investigated Latting's complaint about Taylor, have known about Taylor's propensity to become enraged. *Id.* When Latting told Major Robinson that he wanted to press charges against Taylor, nothing was done to institute charges against Taylor. *Id*. Latting claims that Major Robinson viewed the "video of the assault." *Id.*

Taylor provided a sworn affidavit describing the incident from his point of view. ECF 13-2, at 1–2. Specifically, Taylor states that he was escorting inmates from the library back to the housing unit at the time of the incident. *Id.* at 2 ¶ 4. Taylor was working with Corporal Warfield, and they were doing "standard" pat-down searches of the inmates to "ensure they had not removed unauthorized property from the library." *Id.* After Thompson was searched, Taylor states that Thompson "turned around and began to curse at [Taylor] and aggressively move towards [him]." *Id.* at 3 ¶ 5.

3

Due to Thompson's actions, Taylor says he "moved towards" Thompson "to gain control of him." ECF 13-2, at 2 ¶ 6. Latting was "between [Taylor] and Inmate Thompson," which required Taylor to "use [his] hands to move Inmate Latting out of the way by pushing him aside." *Id.* at 3 ¶ 6. Taylor gained control of Thompson and returned him to the housing unit without further incident. *Id.* ¶ 7. Taylor maintains that his "purpose in making physical contact with Inmate Latting was nothing more than to move him aside" to reach Thompson and "gain control of him." *Id.* ¶ 9. Taylor also asserts that he "did not observe any injuries" to Latting and states that Latting "did not fall or otherwise appear to have been injured as a result of the very brief contact [Taylor] had with him." *Id.* Latting seeks unspecified compensatory and punitive damages. ECF 6, at 5.

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief may be granted is governed by Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the

4

complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

When presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When, as here, Defendants clearly title their motion as one to dismiss, or "in the alternative," as one for summary judgment, and submit matters outside the

pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur because the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Given that Plaintiff was clearly on notice that the motion could be considered as one for summary judgment and had a reasonable opportunity to respond to it,[2] thus this Court is satisfied that the issues presented in this case have been fully briefed and shall construe Defendants' motion as one seeking summary judgment.

## III. ANALYSIS

### A. Plaintiff's Request for Video of the Incident.

To the extent that Latting's opposition response seeks a delay in the consideration of the pending motion to allow for discovery of possible video surveillance footage of the incident, *see* ECF 15, at 1, the request is denied. Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To adequately raise the issue that more discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed

---

[2] Plaintiff's response to the motion is entitled "Plaintiff Response to Defendant's Motion to Dismiss, *or For Summary Judgment*," ECF 15, at 1 (emphasis added), thus reflecting that Plaintiff was aware that conversion under Fed. R. Civ. P. 12(d) was possible.

6

discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, Civ. No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin. Inc.*, 514 F. App'x 378 (4th Cir. 2013). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008). Here, even construing Plaintiff's response to the motion as including the requisite "affidavit of declaration," Plaintiff nonetheless fails to show why he "cannot present facts essential to justify [his] opposition" to Defendants' motion. Fed. R. Civ. P. 56(d). Instead, Plaintiff merely poses a question to the Court: "Where is the video of the incident to prove Plaintiff was injured, assaulted, etc. due to [Taylor's] misconduct and excessive force?"[3] ECF 15, at 2. Indeed, Plaintiff offers no

---

[3] Defendants note in a short reply that "there is no such video." ECF 17, at 1. Plaintiff responds by claiming that he has asked for the video but has been told by a DCDC employee that "they cannot find it." ECF 18, at 1. Plaintiff's filing insinuates that the incident *was* captured on video, but that video simply cannot be located. The Court need not wade into the debate over whether a video exists since Plaintiff has failed to satisfy the requirements of Rule 56(d). Moreover, beyond simply claiming that a video of the incident might exist, Plaintiff fails to allege that the video would "clearly contradict[] the version of the story told by" Defendants in their motion. *See Scott*

countervailing factual narrative refuting the attachments offered in support of Defendants' motion, choosing instead in his response to repeat the standard of review and request relief in his favor. ECF 15, at 1. More is required under Rule 56(d) and thus the Court will proceed to discuss the merits of Defendants' motion.

### B. Claims against Warden and Major Robinson

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived them of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

A defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. Here, Latting fails to allege any conduct by the Warden of DCDC or Major Robinson that demonstrates their participation in any wrongful conduct. Both defendants are therefore entitled to dismissal from this suit.

---

*v. Harris*, 550 U.S. 372, 378 (2007). Stated differently, Plaintiff fails to raise any argument that a reasonable jury may find that the video, if it even exists, somehow bolsters Plaintiff's account of the incident or discredits Defendants' factual summary of the events. *See Simmons*, 106 F.4th at 386.

### C. Claim against Officer Taylor

Pre-trial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). While the Fourth Circuit recognized that a pre-trial detainee's protections under the Constitution could arguably be "greater" than those afforded to convicted prisoners, it historically adopted the deliberate indifference standard applicable under the Eighth Amendment for pre-trial detainees. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Since *Hill*, however, the United States Supreme Court has called into question the equivalence between the standards applied to claims by pre-trial detainees and those applied to claims by post-conviction inmates. In *Kingsley v. Hendrickson*, the Court held that, unlike the standard applied to post-conviction inmates' excessive force claims under the Eighth Amendment, the standard for pre-trial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component. 576 U.S. 389, 396–97 (2015); *see also Short v. Hartman*, 87 F.4th 593, 608 (4th Cir. 2023) ("*Kingsley v. Hendrickson* upends the assumption that Fourteenth Amendment Due Process Clause claims should be treated the same as Eighth Amendment claims"). This means that a pre-trial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97.

The question of "reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396, (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In making the determination of whether force was objectionably reasonable, the Court may consider, among other factors, "the relationship between the need for the use of force and the amount of force used; the extent of the

9

plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citations omitted).

Against this backdrop, Latting's claim fails because Taylor's use of force against Latting was not objectively unreasonable. Taylor's uncontroverted factual summary notes that his contact with Latting was incidental and occurred as he attempted to address a threat posed by another detainee. ECF 13-2, at 3. As observed by the *Kingsley* Court, "[w]e recognize that . . . 'safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.'" 576 U.S. at 399 (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012)); *see also Wilson v. O'Bryant*, No. 3:22CV556-DJN, 2024 WL 1683613, at *6 (E.D. Va. Apr. 18, 2024) (noting that "not every 'push or shove, even if it may later seem unnecessary' rises to the level of a constitutional violation" (quoting *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008))). Taylor's unrefuted affidavit establishes that he did not use force sufficient to cause Latting to fall. ECF 13-2, at 3. The undisputed facts also establish that Latting had issues with his foot before the incident with Taylor occurred. ECF 13-3, at 3. Moreover, Latting openly lamented that he wished he had fabricated more severe injuries in order to support a more lucrative lawsuit, ECF 13-3, at 3; ECF 13-4, at 2, further establishing the apparent insignificance of alleged injuries. Taylor's justified actions, his measured use of force against Latting, coupled with the absence of any injury to Latting, means that Taylor is entitled to summary judgment in his favor.[4]

---

[4] Latting's claim also arguably fails on the "purposely or knowingly" factor, *see Kingsley*, 576 U.S. at 396–97, because the undisputed facts establish that Taylor likely did not intentionally use force against Latting. While traditional personal injury law allows a plaintiff to recover for a negligently inflicted injury, a plaintiff raising a constitutional claim under 42 U.S.C. § 1983 must demonstrate the action complained of was an intentional act. The "Due Process Clause is simply

10

A separate Order follows.

11/25/2024                                           /s/
_____                          _____
Date                                         Brendan A. Hurson
                                             United States District Judge

---

not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Here, Taylor's unrefuted affidavit establishes that the contact with Latting was arguably unintended as it occurred only as Taylor made efforts to address Thompson's behavior.